UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SUE SCORSONE,

Plaintiff, Case No. 13-cv-14418

v Honorable Thomas L. Ludington

WAL-MART STORES, INC.,

Defendant.

_______________________________________/

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY, AND CANCELLING HEARING**

On February 26, 2014, Scorsone filed an amended complaint alleging that her former employer, Defendant Wal-Mart, retaliated against her for taking medical leave pursuant to the Family Medical Leave Act ("FMLA"). Specifically, Scorsone claims that Wal-Mart retaliated by denying her request for Personal Leave, which ultimately resulted in the termination of her employment.

Wal-Mart filed a motion for summary judgment, claiming that Scorsone had not offered sufficient evidence to show that its legitimate reason for denying Personal Leave was pretextual. Wal-Mart also filed a motion seeking to preclude the testimony of Scorsone's damages expert for failure to comply with the Federal Rules of Civil Procedure.

Because Scorsone has proffered sufficient evidence to show pretext, Wal-Mart's motion for summary judgment will be denied. However, because Scorsone has not shown that her failure to disclose her expert's report was harmless, Wal-Mart's motion to preclude the testimony of her expert will be granted.

**I.**

Wal-Mart hired Scorsone to work for its Bay Road location in Saginaw, Michigan, store on September 11, 2008, as a part-time optician. Def.'s Mot. Summ. Ex. A at 34, 48, ECF No. 38. In May 2011, Scorsone requested a transfer to the Brockway store because it was closer to home. *Id*. at 32-33. Wal-Mart granted Scorsone's request and promoted her to Optician II in the Vision Center at the Brockway location. *Id*. at 67.

While Scorsone worked in the Brockway location, her immediate supervisor was Vision Center Manager Samantha Wirtz. In Scorsone's July 2012 employee evaluation, Ms. Wirtz noted that Scorsone "exceed[s] expectations" and provided favorable reviews:

> Sue you do a wonderful job in both helping out the doctor and your co-workers. I appreciate how you are always willing to help out. You have wonderful customer service. You really do make the customers feels welcome. You are always willing to learn something new. I do appreciate all the hard work that you do for both the Vision Center and I. You are a real asset to the team.

Pl.'s Resp. Ex. 3, ECF No. 42. Ms. Wirtz even recommended that Scorsone become a full-time employee. Def.''s Mot. Summ. J. Ex. F at 7.

**A.**

On July 29, 2012, Scorsone fell as she was getting ready for work. Def.'s Mot. Summ. J. Ex. A at 78. It was clear at that time that she had injured her leg; she heard a "horrendous" crack and observed her foot dangling off the end of her leg. *Id*.

After calling Ms. Wirtz to inform her that she could not work, Scorsone called 911. Scorsone was taken by ambulance to the hospital, where a surgeon repaired her fracture the next day. *Id*. at 150. Two days later, Scorsone was transferred to a rehabilitation center, where she remained for approximately two weeks. *Id.* at 79-81.

**B.**

While Scorsone was at the rehabilitation center, a social worker helped her request a medical leave of absence under the FMLA. Def.'s Mot. Summ. Ex. A at 82. The social worker then had Scorsone's physician, Dr. Babu Nahata, complete the medical certification portion of the paperwork and then faxed the papers to Ms. Wirtz on August 6, 2012. *Id.* at 82, 85; Pl.'s Resp. Ex. 2 at 11. According to the certification, Dr. Nahata noted that Scorsone had a "tibia and fibia fracture" in her right leg and that the injury would render her unable to work from "7/29/12" to "2/1/13" (approximately 26 weeks). Pl.'s Resp. Ex 4. Dr. Nahata opined that Scorsone would be unable to perform "all functions" of her job during that period, and that when she returned to work, she would need "shorter days initially". *Id.* Ms. Wirtz received the faxed papers and gave them to Maxine Sequin, the Personnel Manager. Pl.'s Resp. Ex. 2 at 11.

According to Scorsone, she did not receive a response from Wal-Mart concerning the status of her FMLA request. Because Scorsone had not heard anything from Wal-Mart about the status of her FMLA leave request, she contacted her supervisor, Ms. Wirtz. According to Scorsone, Ms. Wirtz told her not to worry about her job:

> I do think I mentioned it to Samantha [Wirtz]. . . . I did say, you know, I never heard back anything. And she said, "Well, just, you know, take it like you're on leave." And I said—She said, you know, "Don't worry about your job. You've still got your job."

Pl.'s Resp. Ex. 1 at 97.

**C.**

On October 8, 2012, while Scorsone was on leave, store manager Joseph Smith sent an e-mail to Ms. Wirtz, Mr. William Mobley (the Health and Wellness Market Director), and Ms. Sequin. The e-mail, with subject line "2644 vision staffing" is reproduced in full below because the parties dispute its meaning:

> I am going to recommend that we post a position to replace Sue on October 29th which is when Sue's FMLA will expire. She is not expected to return until February so her position will need to be replaced. Maria has been scheduled FT hours for several months. An internal temporary vision position should have been opened some time ago to prevent a situation where Maria was on the FT/PT exception report for extended months. You also could have rotated one of the other vision associates to higher hours for a month so as to not allow one to be on the FT/PT list for consecutive months. At this point we can continue scheduling the remaining associates additional hours until Oct 29th.
>
> If we are unable to hire a viable PT candidate to replace Sue, we then will consider posting a FT vision req. If we post the req as a FT position, the other vision center associates can interview for the job and we can give it to the most qualified candidate.
>
> I feel this is the best way to approach this situation to ensure that Sue does not return in the future and have us obligated to give her hours and not have enough to give the remaining associates. We could potentially skip posting a PT job and go straight to FT posting, but we still would need to wait until Oct. 29th, and send Sue the proper FMLA notification that her position is being filled.

Pl.'s Resp. Ex. 8 (emphasis added).

Wal-Mart maintains that the e-mail "was directed at Wirtz's decision to not hire a temporary associate, and her overall management of staff in the Vision Center, nothing more." Mot. Summ. J. 24. Scorsone, in contrast, asserts that the e-mail is evidence of Wal-Mart's intention to retaliate against her, especially when coupled with the events that occurred afterwards, as detailed below.

**D.**

Although Wal-Mart's own internal procedures provide that a Designation Notice be given to the employee within 5 days of receipt of FMLA medical certification, Pl.'s Resp. Ex. 5, Wal-Mart did not provide the Designation Notice to Scorsone until the end of November. The Notice, dated November 30, 2012, was sent by Ms. Sequin (a recipient of Mr. Smith's e-mail) and stated that Scorsone had been approved for twelve weeks of FMLA leave, which had expired over a month earlier on October 22. Pl.'s Resp. Ex. 9.

In addition to the Designation Notice, Ms. Sequin also provided a letter explaining that Scorsone's position in the Vision Center will be posted and filled unless Scorsone returns to work at the end of her medical leave on November 15, 2011—fifteen days before Ms. Sequin sent the letter. *Id*. The letter also explained that Scorsone could request Personal Leave if she could not return to work:

> If you do not wish to return to work, you may request an extension of your leave. If you are not eligible or do not qualify for an FMLA leave, you may request Personal Leave. However, associates on Personal Leave are not guaranteed their previous position when they wish to return to work.
>
> If you have any questions, please feel free to contact your Facility Manager or HR representative immediately to discuss your plans to return to work.

*Id*.

When Scorsone received Ms. Sequin's letter on December 4, 2012, she immediately attempted to contact someone at Wal-Mart. First, she tried to call Mr. Smith twice on December 4, 2012. Then she called Human Resources, but no one answered. Def.'s Mot. Summ. J. Ex. A at 99. Next she called the Assistant Store Manager Cindy Schott, who informed Scorsone that she needed to talk to Ms. Olympia Gully, who was filling in for Ms. Sequin. *Id.* at 99-100.

Over the next seven days, Scorsone called Ms. Gully several times and left messages requesting a return phone-call for the next seven days. Pl.'s Resp. Ex. 1 at 100-101. When she could not reach Ms. Gully by phone, Scorsone got a ride to the store to speak to her in person, but no one was available to speak to Scorsone. *Id*. at 103.

On December 11, 2012,[1] Scorsone was finally able to reach Ms. Gully by phone. During the conversation, Ms. Gully informed Scorsone that she was no longer a member of the Vision Center and that her job had been posted. Def.'s Mot. Summ. J. Ex. A at 105. Ms. Gully

[1] Ms. Gully's notes indicate that the call occurred on December 12, 2012. Ex. 11.

explained that Scorsone could nonetheless apply for Personal Leave,[2] and that she would send Scorsone the paperwork. *Id.*

That same day, on December 11, 2012, Store Manager Smith approved Scorsone's August request for FMLA leave from "7/29/12" to "10/22/12"; in other words, Mr. Smith approved Scorsone's FMLA leave about 7 weeks after the leave expired. Pl.'s Resp. Ex. 4.

On December 19, 2015, Scorsone once again spoke with Ms. Gully, who informed Scorsone that she had only fifteen days to return the Personal Leave paperwork. Scorsone replied that she had not yet received the paperwork. Def.'s Mot. Summ. J. Ex. A at 107. She received the Personal Leave paperwork the next day, on December 20, 2012. *Id*.

Scorsone filled out the paperwork and had a friend take her to Dr. Nahata's office on December 24, 2012. Pl.'s Resp. Ex. 1 at 109-110. At the time, Dr. Nahahta was on vacation and was scheduled to return on January 7, 2013.[3] Therefore, on January 2, 2013, Scorsone returned her portion of the Personal Leave request form on Ms. Gully's desk, explaining: "I brought this paper in today, but Dr. Nahata is gone until the 7th. They will mail his paperwork as soon as he returns." Pl.'s Resp. Ex. 14. When Dr. Nahata returned from vacation, he completed Scorsone's medical certification and mailed copies to Scorsone and Wal-Mart. Pl.'s Resp. Ex. 15.

On January 24, 2013, Scorsone received a phone call from Ms. Gully. During the conversation, Ms. Gully informed Scorsone that her employment had been terminated because Wal-Mart had not received the doctor's form. Def.'s Mot. Summ. J. Ex. A at 126. Scorsone expressed confusion because she had received a copy of Dr. Nahata's form. *Id*. Ms. Gully then

[2] Wal-Mart's Personal Leave policy permits an employee to request up to twelve months of leave. Ex. 13.

[3] It is unclear when Scorsone's 15-day clock for completing the Personal Leave paperwork began to run. Assuming for the moment that the 15-day period began the day she received the paperwork, on December 20, 2015, the period would expire on January 4, 2015—three days before Dr. Nahata returned from vacation.

informed Scorsone that she could pick up her final check the next day. Pl.'s Resp. Ex. 16 at 35-36.

**II.**

Scorsone claims that Wal-Mart retaliated against her by denying her Personal Leave, which ultimately resulted in the termination of her employment. Under the retaliation theory, the relevant inquiry "is whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason." *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 160 (1st Cir. 1998); *accord Edgar v. JAC Products*, 443 F.3d 501, 508 (6th Cir. 2006). The employer's motive is "an integral part of the analysis 'because retaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights.'" *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008) (quoting *Edgar*, 443 F.3d at 508).

**A.**

Scorsone first asserts that she has proffered direct evidence of FMLA retaliation in the form of the e-mail from Mr. Smith. On October 8, 2012—during Scorsone's FMLA leave—Smith sent an e-mail to Ms. Wirtz, Mr. Mobley, and Ms. Sequin. Mr. Smith begins by recommending that Scorsone's job be posted after her FMLA leave expires: "I am going to recommend that we post a position to replace Sue on October 29th which is when Sue's FMLA will expire. She is not expected to return until February so her position will need to be replaced." Pl.'s Ex. 9. After suggesting strategies for hiring a new candidate, Mr. Smith states: "*I feel this is the best way to approach this situation to ensure that Sue does not return in the future and have us obligated to give her hours* and not have enough to give the remaining associates." *Id*. (emphasis added).

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005) (citation and internal quotation omitted). In contrast, "general, vague, or ambiguous comments do not constitute direct evidence of discrimination because such remarks requires a factfinder to draw further inferences to support a finding of discriminatory animus." *Sharp v. Aker Plant Services Group, Inc.*, 726 F.3d 789, 798 (6th Cir. 2013). Instead, "only the most blatant remarks, whose intent could be nothing other than to discrimination on the basis of age, satisfy this criteria." *Id*.

For example, in *Daugherty*, while the plaintiff was requesting FMLA leave, the defendant's human resource director warned the plaintiff that "if I took that FMLA for that period of time, there would not be a job waiting for me, when I returned." 544 F.3d at 699. Thus, in *Daugherty*, there was an explicit connection between the protected conduct and the adverse action: if the plaintiff took FMLA leave, then the defendant would terminate his employment. The human resource director's warning is unambiguous and does not require the factfinder to draw any further inferences.

Here, Mr. Smith's comment that he wants to ensure that Scorsone did not return from FMLA is not direct evidence of retaliation. The statements in the e-mail require the fact-finder to make the inference that Mr. Smith does not want Scorsone to return *because* she took FMLA. It is certainly possible—as detailed below—for a reasonable jury to conclude that Mr. Smith wanted to ensure that Scorsone did not return to work because she engaged in protected conduct. But it is also possible that, as Mr. Smith explains, that he did not want her to return because it would complicate others' schedules. His e-mail is open to at least two reasonable interpretations, and therefore it is too ambiguous to constitute direct evidence of retaliation.

**B.**

Although Scorsone has not offered direct evidence of retaliation, she can nonetheless bring a retaliation claim based on circumstantial evidence. To establish a retaliation claim, a plaintiff must establish that "(1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was causal connection between the protected FMLA activity and the adverse employment action." *Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, 556 (citing *Arban v. West Pub. Corp.*, 345 F.3d 390, 404 (6th Cir. 2003)).

Here, Wal-Mart does not contest that Scorsone has established a prima facie case of FMLA retaliation. Accordingly, for purposes of summary judgment, the Court will assume that she has.

**i.**

Because Scorsone has established a prima facie case of FMLA retaliation, the burden now shifts to Wal-Mart to show that it had a legitimate reason for denying her personal leave. Wal-Mart is not required to meet this burden by a preponderance of the evidence, but rather "the employee's prima face case of discrimination will be rebutted if the employer articulates lawful reasons for the action; that is, to satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

Wal-Mart claims that it denied Scorsone's request for personal leave because Mr. Smith believed that she had not completed and returned the required paperwork. Scorsone does not

dispute that failure to comply with the procedure for requesting personal leave is a legitimate reason to deny personal leave. Accordingly, Wal-Mart has presented a legitimate reason for denying Scorsone's request for personal leave.

**ii.**

Because Wal-Mart has articulated a legitimate reason for its action, the burden of production shifts back to Scorsone to demonstrate that Wal-Mart's reason is pretextual. A plaintiff generally shows pretext by showing that the proffered reason: (1) had no basis in fact; (2) was insufficient motivation for the employment action; or (3) did not actually motivate the adverse employment action. *Smith v. Chrysler Corp.*, 155 F.3d 799, 805-06 (6th Cir. 1998); *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (overruled on other grounds).

Here, Scorsone proffers several things in an attempt to show pretext. Most importantly, Scorsone advances the e-mail from Mr. Smith, the store manager and person who ultimately denied Scorsone's request for personal leave. As noted above, he references Scorsone's FMLA leave before expressing his desire "to ensure that Sue [Scorsone] does not return in the future . . . ." Pl.'s Resp. Ex. 8. A reasonable jury could conclude that the desire to prevent Scorsone from returning was related to her FMLA, given that Mr. Smith discusses her leave before making the statement.

Wal-Mart disputes this interpretation, explaining that Mr. Smith was concerned with the difficulties of scheduling other part-time employees, not with Scorsone's FMLA leave. But whether Mr. Smith wanted to prevent Scorsone from returning because (1) she took FMLA leave or (2) it would cause problems with scheduling is an issue of fact for the jury to decide. The jury can evaluate Mr. Smith's testimony at trial and determine whether it believes his explanation for

why he did not Scorsone to return. *See Ctr. for Bio-Ethical Reform v. City of Springboro*, 477 F.3d 807, 820 (6th Cir. 2007) (a "district court errs by granting summary judgment for the defendant where issues of credibility are determinative of the case.").

Therefore, Scorsone has presented sufficient evidence of pretext by advancing Mr. Smith's e-mail alone. Nonetheless, Scorsone has also presented what she claims are additional indicia of pretext, such as the failure to provide the required FMLA notices, and the "roadblocks" she encountered while trying to request Personal Leave. Although these two indicia would likely be insufficient on their own to show pretext, when considered in light of Mr. Smith's e-mail, a reasonable jury could construe them as attempts to obstruct Scorsone from being able to comply with the Personal Leave requirements—thereby "ensur[ing] that Sue does not return in the future . . . ." Pl.'s Resp. Ex. 8.

For example, had Scorsone been provided the Desigantion Notice in a timely manner (within five days of her FMLA request), she may have been able to coordinate her Personal Leave with her FMLA leave. That is, if she had received the Designation Notice approving her FMLA leave in August, she would have learned then that her FMLA leave was only approved through mid-October. Then, hypothetically she would have had at least two months before her FMLA leave ended in which she could have tried to secure Personal Leave. Instead, by waiting until December to inform Scorsone that her FMLA had expired, she had only fifteen-days—which fell during the holiday season—in which to try to secure the necessary paperwork for Personal Leave. The fact that Ms. Sequin (who was copied on Mr. Smith's e-mail) and Mr. Smith were responsible for the delays in paperwork further supports Scorsone's theory that the roadblocks were intended to prevent her from returning to work at Wal-Mart.

**C.**

In summary, Scorsone has presented sufficient evidence—predominantly in the form of Mr. Smith's e-mail—for a reasonable fact-finder to conclude that Wal-Mart's legitimate reason for terminating her employment was pretextual. Accordingly, Wal-Mart's motion for summary judgment will be denied.

**III.**

Wal-Mart also filed a motion to preclude the testimony of Scorsone's proposed damages expert, Mr. Stafford, for failure to comply with the Federal Rules of Civil Procedure. Wal-Mart explained that, at the time it filed its motion, it still had not received Mr. Stafford's expert report, despite the fact that the deadline for disclosure was three months earlier.

Federal Rule of Civil Procedure 26(a)(2)(B) provides that an individual retained to provide expert testimony shall provide a signed written report that

> must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the expert in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Further, Rule 26(a)(2)(C) provides that "these disclosures shall be made at the time and in the sequence directed by the court." Fed. R. Civ. P. 26(a)(2).

The Sixth Circuit has held that "[u]nder Rule 26(a), a 'report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.'" *R.C. Olmstead, Inc. v. C.U. Interface, LLC*,

606 F.3d 262, 271 (6th Cir. 2010) (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir. 1998)).

Pursuant to the Case Management and Scheduling Order, Scorsone's expert disclosure was due November 3, 2014. Case Mgmt 1, ECF No. 27. Scorsone concedes that she did not disclose her expert report by that deadline. Indeed, she only disclosed her expert report in her response to Wal-Mart's motion on February 18, 2015—more than three months late. The late disclosure is a clear violation of Rule 26(a)(2).

A violation of Rule 26 gives rise to the application of Rule 37(c)(1), which provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The Sixth Circuit has interpreted this rule as requiring the "automatic and mandatory [exclusion of non-disclosed evidence] unless non-disclosure was justified or harmless." *Dickenson v. Cardiax and Thoracic Surgery of Eastern Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004) (quoting *Musser v. Gentiva Health Servs.*, 365 F.3d 751, 758 (7th Cir. 2004); *R.C. Olmstead*, 606 F.3d at 271) "Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a), that is, it mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified." *R.C. Olmstead*, 606 F.3d at 271 (quoting *Roberts v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (citations omitted)). The burden is on the potentially sanctioned party to prove harmlessness. *Id.* at 271-72.

Scorsone attempts to rely on the harmless error prong. She notes that she is willing to comply with Fed. R. Civ. P. 26 *now*, in that she attached the expert report as an exhibit to her response and "is agreeable to making Dr. Stafford available for his deposition between now and

the time of trial . . . ." Pl.'s Resp. 5, ECF No. 40. Moreover, Scorsone "is agreeable to affording Defendant until the July 6, 2015, deadline (a period of almost five months) to identify their expert economist . . . ." *Id*. at 5-6. Lastly, Scorsone contends that striking the expert testimony would be "an extreme measure in light of the fact that the parties have otherwise fully cooperated during the course of the litigation." *Id*. at 6.

First, despite Scorsone's claims that she has now disclosed her expert's report, the report does not comply with the substantive requirements of Rule 26(a). Notably, the report does not include a list of his qualifications, a list of his publications authored in the previous 10 years, or a list of cases in which he has testified in or been deposed in the last four years as required by subparts (B)(iv) and (v). Therefore, it appears that more than three months after the deadline, Scorsone still has not complied with Rule 26's requirements.

Second, the error is not harmless. Even if discovery was reopened so that Wal-Mart could depose Scorsone's expert, Wal-Mart would suffer prejudice in the form of increased costs and attorney's fees. Wal-Mart would also be barred from bringing a motion challenging the expert testimony given that the motion deadline has already passed. Lastly, even if this Court extended the deadline for Wal-Mart to file a motion to challenge the expert testimony, it would necessarily impact the remaining deadlines in this case. The Court is responsible—along with the parties—for ensuring that cases are addressed in a prompt and just manner.

In light of these considerations, courts have routinely concluded that a failure to disclose an expert report is not harmless. *See Nava-Perez v. Jefferson County Stone Co.*, 2012 WL 4098988, at *11-12 (W.D. Ky. Sept. 17, 2012) (Where the failure to comply with Rule 26 discovery obligations would necessitate additional discovery and depositions, the failure was not harmless.); *Innovation Ventures, L.L.C. v. N.V.E., Inc.*, 2014 WL 4979059, at *4 (E.D. Mich.

Oct. 5, 2014) ("Where permitting the expert report would lead to yet another round of expert depositions, increasing the delay and the expense to [the opposing party]", failure to disclose the expert report is not harmless.); *Marathon Petroleum Co. LP v. Midwest Marine, Inc.*, 906 F. Supp. 2d 673, 706 (E.D. Mich. 2012) ("Marathon failed to produce an expert report for Caruthers that identified the opinions he will express and the basis and reasons for them. The Court cannot find that Marathon's failure was harmless or substantially justified. Rather, that breach of the rules causes the defendants substantial prejudice.").

Although Scorsone asserts that striking her expert report would be extreme, it is the remedy mandated by the Federal Rules and by the Sixth Circuit.[4] Scorsone did not comply with the Federal Rules or with this Court's scheduling order, and therefore her proposed expert will not be permitted to testify at trial.

## IV.

Accordingly, it is **ORDERED** that Defendant Wal-Mart's Motion for Summary Judgment (ECF No. 37) is **DENIED**.

It is further **ORDERED** that Defendant Wal-Mart's Motion to Preclude the Testimony of Mr. Stafford (ECF No. 36) is **GRANTED**. Mr. Stafford will not be permitted to testify at trial.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: April 1, 2015

[4] "Every violation of the Rules has consequences; the question is who will bear them. Too often the consequences are borne only by the innocent party, who must live with the violation . . . or else pay to brief and argue a motion to compel the offending party to do what the Rules required it to do all along." *Universal Health Group v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013) (quoting *R.C. Olmstead*, 606 F.3d at 277-78).

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 1, 2015.

s/Suzanne M. Gammon
SUZANNE M. GAMMON